[ECF No. 24]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| N.N. ON BEHALF OF C.M.U. (A MINOR CHILD),<br><br>Plaintiff,<br><br>v.<br><br>NORTHERN BURLINGTON COUNTY REGIONAL SCHOOL DISTRICT, et al.,<br><br>Defendants. | Civil No. 23-1280 (RMB/EAP) |

## OPINION

This matter comes before the Court on Plaintiff's Motion for Leave to File a Second Amended Complaint.  *See* ECF No. 24.  Defendants oppose the motion.  *See* ECF No. 25 (Defs.' Opp.).  Plaintiff filed a reply brief in support of her motion.  *See* ECF No. 28 ("Pl.'s Reply").  The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the following reasons, Plaintiff's motion is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff N.N. brings this action on behalf of her minor child, C.M.U., a Black student, who attended school in the Northern Burlington County School District ("the School District") in October 2022.  *See* ECF. No. 24-2, proposed Second Amended Complaint ("proposed SAC") ¶¶ 1, 34.  Defendants are the School District; the Northern Burlington County Regional Board of Education; Mr. Andrew Zuckerman, Superintendent of the School District; Dr. Sally Lopez,

Principal of the school C.M.U. attended; and Mr. David Simpson, one of C.M.U.'s teachers. *Id.* ¶ 3. The following facts are taken from Plaintiff's proposed SAC.

The events underlying Plaintiff's claims occurred when C.M.U. was a student enrolled in one of Mr. Simpson's classes. During the week of October 21, 2022, Mr. Simpson was teaching the topic of the Temperance Movement. *Id.* ¶ 5. As part of the lesson, Mr. Simpson assigned the students a group project that required them, among other things, to bring a relevant prop (*i.e.*, an artifact) to class. *Id.* ¶¶ 1, 6-9, 13. C.M.U.'s group consisted of C.M.U. and two other students. *Id.* ¶ 14. The group decided to use an empty bottle of alcohol as their project's prop, and that C.M.U. would bring the bottle to class as part of his contribution to the group project. *Id.* When C.M.U. arrived in Mr. Simpson's class on October 21, 2022, C.M.U. removed the empty bottle from his schoolbag. *Id.* ¶¶ 15-16. Mr. Simpson immediately confiscated the bottle and escorted C.M.U. to the Principal's (Dr. Lopez's) office. *Id.* ¶ 16.

Once there, unnamed "school authorities" searched C.M.U.'s person and schoolbag. *Id.* ¶¶ 19-20. Administrators also checked C.M.U.'s vital signs and discovered that his blood pressure was unusually high. *Id.* ¶¶ 20, 23. After receiving information regarding the incident, C.M.U.'s parents gave consent to school officials to perform an alcohol test on their son. *Id.* ¶ 24. However, according to Plaintiff, school officials went beyond the scope of parental consent by performing a test for drugs, in addition to a test for alcohol consumption. *Id.* ¶¶ 25, 44. The alcohol and drug tests were negative. *Id.* ¶ 26-27. Regardless, C.M.U. received a three-day, in-school suspension and a failing grade for the assignment. *Id.* ¶¶ 31, 37.[1] Plaintiff contends that a white student in Mr. Simpson's class who brought in a nerf gun and bullets for his group's prop was treated

---

[1] On an unknown date, Mr. Simpson "called C.M.U. out of the classroom and offered him an impromptu presentation on the [Temperance Movement] project . . . . [and] C.M.U.'s failing grade was then changed to a perfect grade." *See* proposed SAC ¶ 38.

differently because he faced no punishment and received full credit for the assignment. *Id.* ¶¶ 33, 35-37.

As a result of the incident, Plaintiff claims that C.M.U. "suffered emotional distress and mental anguish accompanied by elevated blood pressure." *Id.* ¶ 39. Plaintiff, on behalf of C.M.U., has asserted the following federal claims: a violation of Title VI of the Civil Rights Act of 1965 ("Title VI"), 42 U.S.C. § 2000d, alleging race discrimination against the School District (Count I), proposed SAC ¶¶ 40-42; a Fourth Amendment violation for unreasonable search and seizure (Count II), *id.* ¶¶ 43-45; a Fourteenth Amendment violation of substantive due process (Count IV), *id.* ¶¶ 46-47; a violation of 42 U.S.C. § 1981 for disparate punishment based on race (Count V), proposed SAC ¶¶ 48-49; and imposition of a state-created danger (Counts VI and VII), *id.* ¶¶ 50-55.

In addition, Plaintiff asserts a myriad of state claims. These claims include: a violation of the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2 ("NJCRA"), for invasion of privacy and for an unreasonable search and seizure under the state constitution (Count VIII), proposed SAC ¶ 56; aiding and abetting race discrimination under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-2 ("NJLAD") (Count IX), *id.* ¶¶ 57-58; a state-created danger under the NJCRA (Count X), *id.* ¶ 59; and supervisory liability for a state-created danger (Count XI), *id.* ¶ 60. As relief, Plaintiff seeks compensatory and punitive damages, reasonable attorney's fees, and costs. *Id.* ¶¶ 61-62.

## PROCEDURAL HISTORY

On March 7, 2023, Plaintiff, initially proceeding *pro se*, filed the Complaint commencing this action. *See* ECF No. 1. Plaintiff retained counsel, who entered an appearance on April 10, 2023. *See* ECF No. 8. On April 11, 2023, Defendants filed a motion to dismiss the Complaint

under Rule 12(b)(6), which the Court administratively terminated. *See* ECF Nos. 9-10. On April 14, 2023, Defendants renewed their motion in a letter requesting a pre-motion conference to address whether the Complaint stated a plausible claim. *See* ECF No. 11. In response, on April 14, 2023, Plaintiff filed a First Amended Complaint in accordance with Federal Rule of Civil Procedure 15(a)(1)(B).[2]

On June 9, 2023, Plaintiff filed the present Motion seeking leave to file a Second Amended Complaint. *See* ECF No. 24. Plaintiff did not file a brief in support of the Motion but did file a proposed SAC. *See id.* In the proposed SAC, Plaintiff adds new legal claims,[3] but no additional parties.

On June 26, 2023, Defendants filed a letter opposing the Motion. *See* ECF No. 25. Defendants procedurally attack Plaintiff's Motion, arguing that it violates Local Civil Rule 7.1 because the proposed SAC was not accompanied by a brief or a statement that one was not necessary. *See id.* As for substance, Defendants rely on their April 14, 2023 letter, ECF No. 11 ("Defs.' Pre-Motion Ltr."), to argue that Plaintiff's proposed amendment is futile because the Title VI claim (Count I) and the Fourth Amendment claim (Count II) fail to state a claim. Defendants then posit that without any viable remaining federal claims, the Court lacks jurisdiction over Plaintiff's state-law claims. Defs.' Opp. at 1.[4]

---

[2] Rule 15(a)(1)(B) provides that a party may, as a matter of course, amend a pleading to which a responsive pleading is required either "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). Here, Defendants filed no answer, instead moving to dismiss on April 11, 2023. *See* ECF No. 9. The First Amended Complaint was filed three days later, well within the limits of Rule 15 amendment as a matter of course. *See* ECF No. 12.

[3] These claims are pled in the proposed SAC as Counts V through XI. All of these new claims arise out of the same transaction or occurrence; that is, the searches, testing, and punishment imposed after C.M.U. brought an empty alcohol bottle to school. Also, Plaintiff has abandoned her loss of parental services claim (Count III).

[4] Defendants do not identify the grounds on which they oppose Plaintiff's proposed amendment under Rule 15. The Court, however, surmises that Defendants are opposing Plaintiff's

On June 27, 2023, Plaintiff requested an extension of time to file a reply brief, which the Court granted. *See* ECF Nos. 26, 27. On June 29, 2023, Plaintiff filed her reply brief. *See* ECF No. 28. Plaintiff contends that the amendment is not futile because both Counts I and II plead facts showing a plausible entitlement to relief.

## DISCUSSION

A. **Defendants' Procedural Challenge to the Present Motion Fails Because the Procedural Deficiencies Identified Have Not Prejudiced Any Party**

The Court agrees that the present Motion is procedurally deficient but finds that those deficiencies do not justify dismissing the Motion. Defendants argue that Plaintiff's Motion violates Local Civil Rules 7.1 and 15.1, which require "the party seeking amendment to file a motion which sets forth the basis for the relief sought." Defs.' Opp. at 1. Defendants assert that the Court should deny the Motion "because it does not set forth any basis for which amendment should be granted." *Id.* Plaintiff does not address Defendants' procedural arguments in her reply.

A motion to amend must comply with the procedural requirements of the Court's Local Civil Rules. Local Civil Rule 15.1 governs motions to amend the pleadings. That rule provides in pertinent part:

> A party who seeks leave to amend a pleading shall do so by motion, which shall state whether such motion is opposed, and shall attach to the motion:
>
> (1) a copy of the proposed amended pleading; and
>
> (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added.

---

Motion on the basis of futility and addresses Defendants' arguments from that perspective. Finally, since Defendants have not made any arguments whatsoever regarding Plaintiff's new federal claims in the proposed SAC (Counts V through XI), the Court finds that Defendants have waived opposition to those counts.

L. Civ. R. 15.1(a).  In addition, Local Civil Rule 7.1 governs motion practice generally.  That rule requires every motion to be accompanied by either a brief (submitted to the Clerk of Court 24 days before the applicable Motion Day, or as allowed by the Court) or a statement that no brief is required.  L. Civ. R. 7.1(d)(4).

In this case, Defendants are correct that Plaintiff's Motion does not comply with Local Civil Rule 7.1.  However, "a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment."  *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000); *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) ("The district court's inherent discretion to depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule."), *superseded by rule on other grounds*, Fed. R. Civ. P. 5(d)(4) & 83(a)(2); *Braxton v. Bi–State Dev. Agency*, 728 F.2d 1105, 1107 (8th Cir. 1984) (citation omitted) ("It is for the district court to determine what departures from its rules may be overlooked.").  Noncompliance with the local rules may be excused by the court in its discretion. *See Industriens Pensionsforsikring v. Becton, Dickinson & Co.*, No. 20-2155, 2021 WL 2850417, at *2 (D.N.J. July 8, 2021) (citing cases).

Here, the Court finds that a departure from the Local Rules is warranted.  Although Plaintiff's Motion did not comply with Local Civil Rule 7.1(d)(4), a denial on those grounds would be inappropriate.  The procedural deficiencies do not prejudice Defendants.  In compliance with Local Civil Rule 15.1(a)(2), Plaintiff filed a form amended pleading identifying with brackets the material to be deleted and underlined the material to be added.  *See* ECF No. 24-2.  This provided Defendants adequate notice of grounds to oppose the Motion.  And to dismiss this Motion because

6

of a procedural irregularity would only delay resolution of this case. Accordingly, the Court concludes that a departure from the Local Rules here will not unfairly prejudice the Defendants.

In addition, the Court notes that Defendants also failed to follow the Local Rules as they pertain to the formatting of briefs. *See* L. Civ. R. 7.2(b) ("Any brief shall include a table of contents and a table of authorities"); *see also* L. Civ. R. 7.2(d) ("Each page of a brief shall contain double-spaced text and/or single-spaced footnotes or inserts."). For their opposition, Defendants filed a single-spaced letter referring the Court to its prior letter submission seeking leave to file a motion to dismiss. *See* ECF No. 25. The Court, however, has also overlooked this violation to consider Defendants' opposition to the Motion on the merits. For these reasons, the Court rejects Defendants' procedural arguments and now moves on to consider the substance of Plaintiff's Motion.

B. **Defendants' Substantive Challenge Also Fails Because the Proposed SAC States Plausible Title VI and Fourth Amendment Claims**

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. A party may amend its pleading once as a matter of course within either 21 days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of 21 days after service of a responsive pleading or 21 days after a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). If those deadlines have expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *see also Forman v. Davis*, 371 U.S. 178, 182 (1962).

The Third Circuit has adopted a liberal approach to the amendment of pleadings. *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings."). However, the Court may deny a motion

for leave to amend when: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them. *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Ultimately, the decision whether to grant leave to amend is within the court's discretion. *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

Here, Defendants' sole argument appears to be that the proposed amendment is futile. *See* Defs.' Opp. at 1. Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, the futility of an amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010). Under those standards, a court must accept all factual allegations in a proposed amended complaint as true and view them in the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022). The burden of establishing futility is on the party opposing the amendment. *Anderson v. Salerno*, No. 19-19926, 2021 WL 11585763, at *2 (D.N.J. Jan. 8, 2021) (quoting *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000)) ("The Court notes that Defendants bear the burden of establishing that Plaintiff's proposed amendment is futile, and that, 'given the liberal standard applied to the amendment of pleadings,' that burden is a 'heavy' one.").

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Moreover, a complaint must contain

sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468-69 (D.N.J. 1990) (footnotes omitted) (quoting 6 Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 1487 at 637-42 (2d ed. 1990)). Because neither the Title VI claim nor the Fourth Amendment claim is futile, the Court will grant Plaintiff's Motion.

### 1. Title VI Race Discrimination Claim

Defendants argue that Plaintiff fails to plead facts establishing the School District's liability under Title VI. Because the proposed SAC contains facts that (1) plausibly establish that the school received federal funding; and (2) raise an inference of intentional discrimination by school officials, the proposed SAC is not futile as to the Title VI claim (Count I).

"Title VI prohibits intentional discrimination based on race in any program that receives federal funding." *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 179 (3d Cir. 2016) (citing 42 U.S.C. § 2000d; *Alexander v. Sandoval*, 532 U.S. 275, 282-83 (2001)). Plaintiff appears to rely on indirect evidence to establish an inference of discrimination. Courts assess indirect evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017). Under that framework, a plaintiff must establish a prima facie case of discrimination; namely, "that they suffered some adverse action under circumstances suggesting that the action was related to their membership in a protected group." *Xu Feng v. Univ. of Del.*, 785 F. App'x 53, 55 (3d Cir. 2019) (citing *McDonnell Douglas*, 411 U.S. at 802).

9

Here, the proposed SAC asserts that C.M.U., a Black student, was treated differently than a similarly situated white student based on race. More specifically, Plaintiff alleges that C.M.U. was punished for bringing an empty bottle of alcohol to school for a project related to the Temperance Movement but a white student who brought a nerf gun into school on the same day for the same project, was not. Proposed SAC ¶¶ 5, 7, 21, 33-37. "By affording C.M.U. differential treatment from his white counterpart," Plaintiff continues, "Defendant school district discriminated against C.M.U. on account of his race in violation of Title VI." *Id.* ¶ 42.

Favorable treatment of a comparator establishes a causal connection between adverse action and plaintiff's race when the comparator and the plaintiff are similarly situated in all relevant respects. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Here, Plaintiff alleges that the proposed comparator student is similarly situated to C.M.U. because both students were completing the same assignment in the same class for the same teacher, and because both students allegedly violated various School District policies by bringing their respective props to class. Because the proposed SAC adequately pleads that C.M.U., a Black student, faced disciplinary consequences while a white student who engaged in similar behavior went unpunished, the Court rejects Defendants' contention that Plaintiff's proposed Title VI claim is futile.[5] Accordingly, Plaintiff's Motion as to her Title VI claim is granted.

---

[5] Defendants also argue that *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), requires Plaintiff to plead not only intentional discrimination, but actual knowledge of severe or pervasive discrimination and deliberate indifference. Defs.' Pre-Motion Ltr. at 3. The Court rejects that argument. Because Plaintiff's claims are based on teacher-student discrimination—not discrimination by a third-party, such as peers—*Davis* is inapplicable. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74-75 (1992) (holding that Title IX provided plaintiffs a damages remedy for teacher-on-student harassment so long as (1) the institution in question receives federal funds and (2) the school district had notice of the conduct, a requirement satisfied by allegations of intentional discrimination); *Sax v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 n.5 (3d Cir. 2001) (importing the standards for Title IX, including *Franklin*, 503 U.S. 60 (1992), to the Title VI analysis). In this case, the proposed SAC contains both required allegations.

## 2. Fourth Amendment Claims

The proposed SAC alleges that school officials violated C.M.U.'s Fourth Amendment rights when they performed a drug test without a reasonable basis and without parental consent. *See* proposed SAC ¶¶ 24-25, 44. Defendants argue that the proposed SAC fails to plausibly plead any unreasonable search or seizure and thus, Plaintiff's claims are futile. Defs.' Pre-Motion Ltr. at 3. More specifically, Defendants argue that C.M.U.'s elevated blood pressure justified the drug testing. *Id.* Defendants further argue that school officials acted reasonably because they followed New Jersey law requiring school districts to adopt policies regarding intoxicated students. *Id.*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers. *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985) (citing *Elkins v. United States*, 364 U.S. 206, 213 (1960)). For this reason, public school district officials, as state officers, are subject to the Fourth Amendment's prohibition on unreasonable searches and seizures. *Id.*

However, students have a diminished expectation of privacy in school. *Id.* at 340. In the school context, a search is lawful if it is "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 341. A search is "justified at its inception where there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42 (footnote omitted). And a search is reasonable in scope "when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light

---

*See* proposed SAC ¶¶ 15, 21, 31, 33-37, 41 (intentional discrimination), ¶ 40 (federal funding). Plaintiff need not plead more.

of the student's age and sex and the nature of the infraction." *Id.* at 342. The Court in *T.L.O.* also noted that "additional information secured in the course of the [initial] search[s] [may] warrant[] more inclusive follow-up searches." *Id.* at 347.

The Court finds that the facts alleged in the proposed SAC support a plausible Fourth Amendment Claim. According to the proposed SAC, school officials drug tested C.M.U. after administrators only found evidence of alcohol use—an empty bottle and high blood pressure. Under the circumstances as alleged, Plaintiff has plausibly shown that school officials did not have reasonable suspicion to support a drug test. Thus, Plaintiff has plausibly pled that the drug test was performed without reasonable grounds.

The Court also finds that the proposed SAC plausibly alleges that the drug test exceeded the scope of consent. Plaintiff alleges that C.M.U.'s parents did not consent to the drug test. Proposed SAC ¶¶ 24-25, 44. The scope of consent to an otherwise unlawful search is determined by what a reasonable person would have understood under the circumstances. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (citations omitted) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1208 (10th Cir. 2003) (applying the *Jimeno* standard to determine the scope of parental consent to searches of preschoolers). Reasonableness depends on context, and for the purposes of this Motion, the Court must make all reasonable inferences in Plaintiff's favor, considering only the facts as alleged in the proposed SAC. The only fact pleaded regarding the exchange between C.M.U.'s parents and school officials is that there was no parental consent for the drug test. Proposed SAC ¶¶ 24-25, 44. Accordingly, the proposed SAC contains facts plausibly showing that the drug test exceeded the scope of consent.

Finally, Defendants argue that the Fourth Amendment claim is futile because the drug test complied with New Jersey law and school policy. Under Third Circuit precedent, a teacher's suspicion that a student is intoxicated justifies a search only when supported by particularized facts. *See Hedges v. Musco*, 204 F.3d 109, 118 (3d Cir. 2000) (footnote omitted) ("[W]here a teacher's suspicion is based on objective facts that suggest that a student may be under the influence of drugs or alcohol, examination . . . will be permissible"); *see also id.* at 122 (discussing a facial challenge to a school drug testing policy on Fourth Amendment grounds—a policy that was not discussed when the court determined the constitutionality of any search made pursuant to that policy).

Here, Plaintiff essentially brings an as-applied challenge, arguing that the drug test violated C.M.U.'s Fourth Amendment rights even though it was allowed by school policy or state law. As such, the proposed claim is not futile so long as Plaintiff alleges that a search—even a search made pursuant to a valid state law or district policy—violated his constitutional rights. *See T.L.O.*, 469 U.S. at 341 (holding that "the legality of a search of a student should depend simply on the reasonableness, under all of the circumstances, of the search"). Although state law is relevant to the reasonableness analysis, it is not dispositive. *See Christopher v. Nestlerode*, 373 F. Supp. 2d 503, 514 (M.D. Pa. 2005) (citations omitted) ("State law plays an important role in Fourth Amendment analysis as part of the jurisprudential background informing past and contemporary notions of 'reasonableness'" and noting that "'state law' for these purposes, encompasses the laws of all of the states . . . . [and] is intended to reflect the national judgment of the scope of the privacy rights embodied in the Fourth Amendment."). Therefore, for purposes of this Motion, whether the drug test was performed pursuant to a specific state law or school policy does not itself determine whether the search was reasonable. And while state law may be relevant to the substantive Fourth

13

Amendment analysis, Defendants have not met their heavy burden of showing futility. For these reasons, Plaintiff's Motion as to her Fourth Amendment claim is granted.

### 3. State Law Claims

Defendants challenge Plaintiff's state law claims on jurisdictional grounds. Defendants argue that in the absence of any plausible federal claims, the Court lacks jurisdiction over Plaintiff's state law claims. Defs.' Pre-Motion Ltr. at 3. Defendants do not argue that the amendment of those counts would be substantively futile.

Here, as previously discussed, the Court finds that Plaintiff's federal claims are not futile. And because the state law claims arise out of the same transaction or occurrence as the federal claims, this Court would have supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. For these reasons, Plaintiff's state law claims are not futile, and Plaintiff's Motion as to her state law claims is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for leave to file a Second Amended Complaint is **GRANTED**. An appropriate Order follows.

s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc: Hon. Renée M. Bumb, U.S.D.J.