[Docket No. 106.]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| N.N., INDIVIDUALLY AND ON BEHALF OF C.M.U (A MINOR CHILD),<br><br>    Plaintiff,<br><br>  v.<br><br>NORTH BURLINGTON COUNTY REGIONAL SCHOOL DISTRICT, *et al.*,<br><br>    Defendants. | Civil No. 23-1280 (RMB-EAP)<br><br>**OPINION** |

**APPEARANCES**

JOHN H. UYAMADU, LLC
John H. Uyamadu, Esq.
2 Ridgedale Avenue, Suite 335
Cedar Knolls, New Jersey 07927

    *Attorney for Plaintiff*

POSTERNOCK APELL, PC
Daniel Posternock, Esq.
Diana R. Sever, Esq.
302 Harper Drive, Suite 103
Moorestown, New Jersey 08057

    *Attorneys for Defendants*

**RENÉE MARIE BUMB, Chief United States District Judge**

Plaintiff N.N. ("Plaintiff" or "N.N.") brought suit on behalf of her minor child

C.M.U. ("C.M.U.") against Defendants Northern Burlington County Regional

1

[Docket No. 106.]

School District ("District"), School Superintendent Andrew Zuckerman ("Zuckerman"), Principal Dr. Sally Lopez ("Lopez"), Teacher David Simpson ("Simpson"), Northern Burlington County Regional Board of Education ("Board of Education"), and Assistant Principal Brandon Bennett ("Bennett"), claiming that they violated federal and state discrimination laws for suspending C.M.U. for bringing an alcohol bottle to school as part of a history project. [Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 1 (DSOMF) (Docket No. 106-2).] After a series of amended complaints and substitution of counsel, the operative complaint in this matter is the Fourth Amended Complaint. *See Compl.* (Docket No. 73.). Defendants District, Simpson, Lopez, Bennett, and Zuckerman (collectively "School District Defendants"), now move for summary judgment, contending Plaintiff's claims fail because, among other reasons, School District Defendants acted pursuant to statutory and Board Policy mandate. [Defs.' Brief in Support of Motion for Summary Judgment at 2 (Defs.' SJ Br.) (Docket No. 106-1).]

Having reviewed the record, the Court finds Plaintiff has not shown a dispute of material fact to resist summary judgment, and therefore, the Court **GRANTS** School District Defendants' summary judgment motion.

## I.    FACTUAL BACKGROUND

As an initial matter, Plaintiff fails to adequately respond to Defendants' Motion for Summary Judgment in accordance with Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1(a). The Third Circuit has upheld district courts' decisions deeming as admitted factual assertions where the party opposing summary

2

[Docket No. 106.]

judgment failed to properly respond to a factual assertion. *See, e.g., Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (holding district court properly deemed as admitted factual assertions where plaintiff denied assertions in defendant's statement of material facts and "then wrote answers that did not actually reject the paragraphs it responded to"). This Court will deem as admitted any factual assertion that Plaintiff has failed to properly respond to as required by Rule 56.1(a) unless the assertion is contradicted by record evidence. *See Fantastic Sams Franchise Corp. v. Weekes*, 2023 WL 2696595, at *1 n.3 (D.N.J. Mar. 29, 2023) (presuming movant's facts undisputed "unless demonstrated by the parties' record evidentiary submissions" where non-movant's statements in responsive statement of facts were nonresponsive). Nonetheless, the Court addresses Plaintiff's Opposition [Docket No. 112], in full. With these principles, the record is as follows.

## A. The Disciplinary Incident

In October 2022, Plaintiff C.M.U., who is Black, was an eleventh-grade student at Northern Burlington Regional High School. [DSOMF ¶¶ 1, 5.] As a student in Mr. Simpson's United States Advanced Placement History class ("APUSH"), C.M.U. took part in a group assignment to create a presentation on a selected historical topic ("Project"). [*Id.* ¶¶ 2, 6.] C.M.U. and his groupmates selected the topic of "Temperance," which C.M.U. understood to mean the banning and/or prohibition of alcohol. [*Id.* ¶ 7.]

As part of the Project, students were tasked to present "artifacts" that would properly describe the group's selected topic. [*Id.* ¶ 9.] The Project Rubric encouraged

3

[Docket No. 106.]

groups to "attract people to come view your booth" by "getting creative[,]" and presenting items that "represent your cause" either "symbolic or literal." [*Id.* ¶ 10.] On October 21, 2022, C.M.U. brought a bottle of Fireball whiskey to school as an artifact for his group's presentation. [DSOMF ¶ 11.] C.M.U. admitted the bottle, which he transported from home to school in his backpack and on the school bus, was partially full and was given to him by his mother to bring in for the Project. [*Id.* ¶¶ 12–14.] Lopez, who was principal of the school at the time, testified that she knew about the Project and knew that C.M.U. was working on alcohol prohibition but was unaware "the reason for the students to bring in artifact[s]." [Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Pl.'s Opp'n) Docket No. 112 ¶ 15.]

After observing C.M.U. remove the Fireball bottle from his backpack, teacher Simpson confiscated the bottle, identified it as alcohol, and took both C.M.U. and the Fireball bottle to the main office. [*Id.* ¶¶ 16–17.] C.M.U. acknowledged Simpson had no further involvement in the matter after escorting him to the main office. [*Id.* ¶¶ 21–22.] Lopez was not present at school on the day of the incident. [*Id.* ¶¶ 62–63.]

The incident was reported to Assistant Principal Brandon Bennett, who confiscated the bottle, interviewed C.M.U., and had him write a statement. [*Id.* ¶¶ 44–45.] Bennett contacted C.M.U.'s parents and provided C.M.U.'s father with a "Form Letter and copy of District Policy and Regulation 5530, Substance Abuse, and referred CMU out for a mandatory 10-panel urine screen." [*Id.* ¶ 52.] Zuckerman testified to only seeing paperwork for alcohol screening but was notified by Lopez that additional tests were conducted without their request. [Pl.'s Opp'n ¶¶ 1–2; Defs.' Reply ¶¶ 1–2.]

[Docket No. 106.]

Lopez claims it was typically school practice to send a child in possession of alcohol in for both alcohol and drug screening. [*Id.* ¶ 3.] In the Parent Acknowledgement to Screen Form, completed by C.M.U.'s parent, only the box consenting to alcohol screening was checked off, but the box consenting to drug screening was not. [*Id.* ¶¶ 4–5; Defs.' Reply ¶¶ 4–5.] C.M.U.'s father agreed to take C.M.U. to the School District's medical facility for testing, where C.M.U. was tested for both drugs and alcohol and all his results came back negative. [DSOMF ¶ 56.]

Bennett referred C.M.U. for discipline, and C.M.U. received a three-day in-school suspension. [*Id.* ¶¶ 57–60.] C.M.U. served a three day in-school suspension from October 24, 2022 to October 26, 2022. [*Id.* ¶ 61.] Lopez testified that she did not know, because she was not there, whether C.M.U. was left on his own without supervision or schoolwork on the first day of his in-school suspension. [Pl.'s Opp'n ¶ 14; Defs.' Reply ¶ 14 (Docket No. 113).] During depositions, Lopez was presented with an email sent from N.N. on the night of the first day of the suspension complaining and claiming C.M.U. was abandoned in room, but Lopez does not recall receiving the email or what she did in response to it. [*Id.*] C.M.U. was not present for the oral part of his presentation, so Simpson gave him a zero for the oral aspect of his Project. [DSOMF ¶¶ 69–70.] However, after C.M.U.'s suspension, he was permitted to make up the oral part of his project and earned 100%. [*Id.* ¶ 73.] C.M.U. later graduated from Northern Burlington High School on time. [*Id.* ¶ 74.]

**B. New Jersey Law and School District Policies**

[Docket No. 106.]

Under New Jersey law, each board of education is instructed to adopt policies and procedures for discipline of pupils involved in incidents of possession or use of substances on school property.  [*Id.* ¶¶ 23–24 (citing N.J.S.A. 18A:40A-11; N.J.A.C. 6A:16-4, et seq.).]  New Jersey code requires educational staff to immediately report alcohol suspicion to the principal, or the school nurse in the principal's absence.  [*Id.* ¶ 26 (citing N.J.A.C. 6A:16-4.3(a)(1)).]  Educational staff is also directed to seize and turn over to the principal or designee, the alcohol or other item.  [*Id.* ¶ 33 (citing N.J.A.C. 6A:16-6.]  The principal is then directed to notify the parent for immediate medical examination.  [*Id.* ¶ 27 (citing N.J.A.C. 6A:16-4.3(a)(2)).]  New Jersey code directs school districts to establish minimum requirements for medical examination.  [*Id.* ¶ 28 (citing N.J.A.C. 6A:16-4.3(a)(4)).]  Failure of students to comply with such procedures is treated as a policy violation.  [*Id.* ¶ 29 (citing N.J.A.C. 6A:16-4.3(e)).]

Burlington County School District policy and the Student Handbook for 2022-2023 prohibit the possession of alcohol on school grounds, and District Policy instructs educational staff to comply with New Jersey Code.  [*Id.* ¶¶ 30–33, 42.]  According to school district regulations, when there is reasonable suspicion a student is in possession of alcohol the administration must exclude the student from school pending formal hearing.  [*Id.* ¶ 36.]  Moreover, the administration must "arrange immediately for a medical ten (10) part urine drug screen and possibility of an alcohol breathalyzer test."  [*Id.* ¶ 37.]

## C. Proposed Comparator

[Docket No. 106.]

Plaintiff contends that a similarly situated white classmate was not subject to the same discipline as C.M.U. for bringing a Nerf gun to school for the Project. [*Id.* ¶ 80.] C.M.U. argues in his deposition that this student's actions should have been treated the same as his own. [*Id.* ¶ 81.] Simpson did not report the white student to administration but instead placed the Nerf gun in the back office of the media center. [*Id.* ¶¶ 86–87.]

There is a dispute as to the policy and guidelines around Nerf guns on school premises. Zuckerman testified that there is no school policy on Nerf guns, but that students are typically not allowed to bring Nerf guns to school, and the administrator may confiscate and later return the Nerf gun dependent on the situation. [Pl.'s Opp'n ¶¶ 6–8, 9; Defs.' Reply ¶¶ 6–8, 9.] The administration then may decide whether it is necessary for the principal to take other actions. [Pl.'s Opp'n ¶ 10; Defs.' Reply ¶ 10.] Lopez testified that teachers may tell high school students to put away a Nerf gun or may confiscate them depending on if the student is acting inappropriately with the Nerf gun, but notes there is no School District policy on Nerf guns. [Pl.'s Opp'n ¶¶ 11, 13; Defs.' Reply ¶¶ 11, 13.] School District policy defines weapon as "anything readily capable of lethal use or of inflicting serious bodily injury." [DSOMF ¶ 85.]

## II.    PROCEDURAL HISTORY

Plaintiff filed this lawsuit *pro se* on March 7, 2023. [Docket No. 1.] Plaintiff retained counsel, who entered a notice of appearance on April 10, 2023. [Docket No. 8.] As alluded to above, Plaintiff was permitted to file four amended complaints, [Docket Nos. 12, 31, 43, 73.] Plaintiff filed a Fourth Amended Complaint on January

[Docket No. 106.]

23, 2025.  [Compl. ]  The Fourth Amended Complaint asserted the following claims against the Defendants.

Count I: Title VI Discrimination on the Basis of Race [*id.* ¶¶ 43–46.]

Count II: 42 U.S.C. § 1983 ("Section 1983") Claim for Violation of C.M.U.'s Right to Privacy and Rights Under the Fourth Amendment to Be Free From Unreasonable Search and Seizure [*id.* ¶¶ 47–50.]

Count IV: Section 1983 Claim for Violation of C.M.U.'s Fourteenth Amendment Substantive Due Process Right By Imposing a Three-Day In-School Suspension [*id.* ¶¶ 51–53.]

Count V: 42 U.S.C. § 1981 ("Section 1981") Equal Benefit and Like Punishment Clauses Claim for Discrimination on Account of C.M.U.'s Race [*id.* ¶¶ 54–56.]

Count VI: Section 1983 State Created Danger Claim against Simpson [*id.* ¶¶ 57–61.]

Count VII: Section 1983 State Created Danger Claim against Zuckerman, Lopez, and Bennett [*id.* ¶¶ 62–64.]

Count VIII: NJCRA Claim for Violation of C.M.U.'s Right to Privacy and Rights Under N.J. Const. Art. 1 Par. 7 to Be Free From Unreasonable Search and Seizure [*id.* ¶¶ 65–66.]

Count IX: NJLAD Place of Public Accommodation and Aiding and Abetting Claims for Discrimination on Account of C.M.U.'s Race [*id.* ¶¶ 67–69.]

Count X: NJCRA Claim for Creation of a State Created Danger against Simpson [*id.* ¶¶ 70–71.]

Count XI: NJCRA Claim for Creation of a State Created Danger against Zuckerman, Lopez, and Bennett, as supervisors [*id.* ¶¶ 72–73.]

Count XII: Section 1983 Selective Enforcement Denial of Equal Protection against Simpson [*id.* ¶¶ 74–77.]

Count XIII: Section 1983 Class-Of-One Denial of Equal Protection Claim against Simpson [*id.* ¶¶ 78–82.]

[Docket No. 106.]

Count XIV: NJCRA Selective Enforcement Denial of Equal Protection Claim against Simpson [*id.* ¶¶ 83–84.]

Count XV: NJCRA Class-Of-One Denial of Equal Protection Claim against Simpson [*id.* ¶¶ 85–86.]

Thereafter, the parties engaged in discovery. On November 7, 2025, School District Defendants filed a Motion for Summary Judgment. Plaintiff filed in Opposition [Pl.'s Opp'n], and School District Defendants replied. [Defs.' Reply.] The Motion is now ripe for determination.[2]

## III. LEGAL STANDARD

Courts must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.* To prevail on a summary judgment motion, the moving party must show the nonmovant cannot establish one or more essential elements of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party."

---

[2] Unfortunately, Plaintiff's briefing in this matter is woefully deficient and the task before the Court has been an onerous one. Although Plaintiff asserted fourteen claims, Plaintiff's Opposition Brief, which is missing a Statement of Undisputed Material Facts pursuant to Local Rule 56, is a mere five pages with no analysis of each of his claims.

[Docket No. 106.]

*SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (alterations in original) (quoting *Celotex*, 477 U.S. at 322).

## IV.    DISCUSSION
### A.        Count I: Title VI

Plaintiff claims the School District violated Title VI of the Civil Rights Act when it treated C.M.U. adversely while favoring a white student.  [Compl. ¶¶ 43–46.]  School District Defendants move for summary judgment on Plaintiff's Title VI claims, because there is no record evidence upon which a reasonable juror could find the School District Defendants intentionally discriminated against C.M.U.  [Defs.' SJ Br. at 5–7.]  The Court agrees.

Plaintiff has failed to produce sufficient evidence to establish a claim under Title VI of the Civil Rights Act.  Title VI prohibits intentional discrimination based on race in any program that receives federal funding. 42 U.S.C. § 2000d.  To state a racial discrimination claim under Title VI in the educational setting, Plaintiff must allege: (1) C.M.U. is a member of a protected class; (2) C.M.U. was "qualified to continue in pursuit of [his] education;" (3) C.M.U. "suffered an adverse action;" and (4) that "action occurred under circumstances giving rise to an inference of discrimination." *Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)), *aff'd*, 767 F.3d 247 (3d Cir. 2014). Title VI applies only to "intentional discrimination[,]" *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001), which "[p]laintiffs can prove … by pointing to 'comparator' evidence." *Burns v. SeaWorld Parks & Ent., Inc.*, 2024 WL 1660514, at *10 (E.D. Pa.

Apr. 17, 2024). Indeed, "[e]vidence that a similarly-situated student outside the protected class was treated differently may raise an inference of discrimination." *Blunt*, 826 F. Supp. 2d at 758 (citing *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at *5 (E.D. Pa. Dec. 30, 2004) (internal citations omitted)).

For the purposes of this Motion, the Court assumes that Plaintiff satisfies the first three elements. Plaintiff's claim nevertheless fails because the record contains insufficient evidence from which a reasonable jury could infer that School District Defendants' actions were motivated by race. Plaintiff's allegations about another student are just that, allegations. There is no evidence to support an inference of racial discrimination. Plaintiff fails to point to any similarly situated student who was treated differently because of his race. Rather, Plaintiff contends that a white classmate was not subject to the same discipline for bringing a Nerf gun to school. [DSOMF ¶ 80 (citing Compl.).] The record fails to demonstrate that the students engaged in comparable conduct. Instead, the record reflects that the alleged comparator possessed a Nerf gun as part of the Project and C.M.U. possessed a bottle of Fireball as part of the Project.

Plaintiff points to alleged inconsistencies in the testimony of school officials concerning the permissibility of Nerf guns on school property. This is not the proper focus. Even assuming such inconsistencies exist, it is not evidence that Defendants, and the school's policy regarding the same, treated the students differently because of C.M.U.'s race. Bringing alcohol to school as a minor, which is illegal, is not the same as bringing to school what some may consider a potentially dangerous toy, which is

11

[Docket No. 106.]

not illegal.  The School District's policies reflect that distinction.  Under the most generous reading of the record, this evidence amounts to mere speculation that the disciplinary outcome would have been different had C.M.U. been of a different race.  Speculation is insufficient to survive summary judgment.  *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) ("[S]peculation and conjecture may not defeat a motion for summary judgment." (citing *Acumed LLC. v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009))).  Accordingly, the record fails to raise an inference of racial discrimination.

Nor does the remainder of the record suggest School District Defendants directly discriminated against C.M.U., like making discriminatory comments to or about him, or implementing discriminatory policies.  Because Plaintiff has failed to produce any evidence from which a reasonable jury could find intentional discrimination, the Motion for Summary Judgment will be granted as to this claim.

### B. Counts II and VIII: Fourth Amendment and NJCRA Claim for Violation of Privacy and Right to be Free From Unreasonable Search and Seizure.

Plaintiff alleges that School District Defendants violated C.M.U.'s Fourth Amendment rights, as well as rights under the New Jersey Civil Rights Act (NJCRA) and the New Jersey Constitution, by subjecting him to an unreasonable search in the form of a urine screen.  [Compl. ¶¶ 47–50, 65–66.]  School District Defendants move for summary judgment on these claims.  [Defs.' SJ Br. at 7–17, 24.]

### i.    School District and Mr. Bennett

The Fourth Amendment protects against unreasonable searches and seizures. *See* U.S. Const. amend. IV. "[A] search 'occurs when an expectation of privacy that society is prepared to consider reasonable is infringed[.]'" *Heard v. City of Plainfield*, No. 24-10293, 2025 WL 3017902, at *6 (D.N.J. Oct. 28, 2025), *reconsideration denied*, No. 24-10293, 2026 WL 508102 (D.N.J. Feb. 24, 2026) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652 (1984)). To demonstrate that a deprivation of this right occurred, Plaintiff must show both that: (1) a search occurred; and (2) that it was unreasonable. *See United States v. Jones*, 565 U.S. 400, 404-06 (2012) (first determining whether government conduct constituted a search within the meaning of the Fourth Amendment before considering its reasonableness). "Fourth Amendment reasonableness 'is predominantly an objective inquiry.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000)).

In determining that a reasonableness standard applies in cases applying the Fourth Amendment to the public school setting, the Supreme Court of the United States noted "the role public schools play in furthering 'publicly mandated educational and disciplinary policies.'" *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1012 (7th Cir. 1995) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 336 (1985)). It also recognized that "the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." *T.L.O.*, 469 U.S. at 339. "Events calling for discipline are frequent occurrences and sometimes

require immediate, effective action." *Id.* (quoting *Goss v. Lopez*, 419 U.S. 565, 580 (1975)). "[A] student search is reasonable if it is (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Heard*, 2025 WL 3017902, at *6 (citing *T.L.O.*, 469 U.S. at 341) (internal citations omitted)).

Here, a search occurred when C.M.U. underwent a urine screening following the discovery of his possession of alcohol on school grounds. The question becomes, then, whether the search was reasonable, and Plaintiff has introduced no evidence to conclude otherwise. The Court finds that the search was reasonable. Upon learning that C.M.U. had brought an open bottle of Fireball onto school property, Bennett interviewed C.M.U., obtained a written statement, contacted his parents, and arranged for medical screening in accordance with the School District's procedures governing alcohol-related incidents. Clearly, Bennett had an objective basis to suspect C.M.U. had violated school rules prohibiting possession of alcohol on school grounds. *T.L.O.*, 469 U.S. at 341–42 (finding a search will be '"justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student had violated or is violating either the law or the rules of the school.")

The search was also reasonable in scope. Bennett was confronted with a student who admittedly possessed alcohol at school. Given the School District's obligation to maintain a safe educational environment, referral for urine screen "was reasonably related in scope to the circumstances which justified the interference in the first place[.]" *Id.* at 339. New Jersey law and School District policy instruct administrators

14

to do so.  Although Plaintiff points to evidence that C.M.U.'s parent consented only to alcohol screening, Plaintiff's focus on parental consent is misplaced.  School officials have substantial authority to investigate alcohol and drug related misconduct.  *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 665–66 (1995); *Bd. of Educ. v. Earls*, 536 U.S. 822, 838 (2002). Indeed, this District has upheld a school district's drug testing policy which, based upon individualized suspicion did not require a parent's consent before conducting a drug test.  *See Gutin v. Washington Twp. Bd. of Educ.*, 467 F. Supp. 2d 414, 423 (D.N.J. 2006), *on reconsideration*, No. 04-1947, 2007 WL 2139376 (D.N.J. July 23, 2007).  In any event, the record is undisputed that the school requested only alcohol screening, and Plaintiff has no evidence to the contrary.  Accordingly, the Court grants summary judgment in favor of Bennett on Plaintiff's Fourth Amendment claim.

Because Plaintiff has failed to establish an underlying constitutional violation, any Fourth Amendment claim against the School District fails as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (finding a municipality cannot be held liable "when in fact the jury has concluded that the officer inflicted no constitutional harm."); *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989) (finding a municipality "cannot be vicariously liable under Monell unless one of [the municipality's] employees is primarily liable under section 1983 itself.")  Even assuming Plaintiff could identify a municipal policy or custom, of which the record is devoid of any such evidence, municipal liability cannot attach in the absence of a constitutional deprivation.  *See Heller*, 475 U.S. at 799.  Accordingly, the Court grants

15

[Docket No. 106.]

summary judgment in favor of Bennett and the School District on Plaintiff's Fourth Amendment claim.

### ii.    Mr. Simpson

Plaintiff's Fourth Amendment claim against Simpson fails at the outset. "A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As the record contains no evidence that Simpson participated in the decision to require C.M.U. to undergo a urine screen, summary judgment will be granted for Simpson as to Count II. *See Harvey v. Czplinski*, No. CV 16-8181 (RMB), 2016 WL 7436052, at *2 (D.N.J. Dec. 22, 2016) (dismissing Section 1983 claims where complaint did not "in any way disclose" how defendants were personally involved).

### iii.    Dr. Zuckerman and Dr. Lopez

Plaintiff's Fourth Amendment claims against Zuckerman and Lopez fare no better. "[L]iability cannot be predicated solely on the operation of *respondeat superior*." *Rode,* 845 F.2d at 1207 (citations omitted). *Accord Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293–96 (3d Cir. 1997); *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir. 1995). As the record shows, neither Lopez nor Zuckerman had any personal involvement in the urine screening, summary judgment will be granted as to Zuckerman and Lopez for Count II.[3]

### iv.    NJCRA and New Jersey Constitution Claims

---

[3] Fourth Amendment claims may also be dismissed as duplicative against Zuckerman, Lopez, and Bennett to the extent they are brought against the School District directly.

16

[Docket No. 106.]

Likewise, School District Defendants will also be granted summary judgment on Plaintiff's NJCRA claim for privacy, and New Jersey Constitution claim to be free from unreasonable search and seizure. "This district has repeatedly interpreted NJCRA analogously to § 1983." *Pettit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases); *see also Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 164 n. 5 (3d Cir. 2008). Although the New Jersey Constitution, in certain circumstances, affords greater protections than the Fourth Amendment, *State v. Earls*, 214 N.J. 564, 584 (2013), Plaintiff provides no authority suggesting that a different standard governs school searches conducted in response to suspected alcohol violations. Nor does the Court discern any basis for applying a different standard here. Because the Court finds no Fourth Amendment violation, Plaintiff's parallel NJCRA claim fails as well.

### C. Count IV: Substantive Due Process

Plaintiff's fourth cause of action alleges that Defendants violated C.M.U.'s substantive due process right to receive education at his school by "lock[ing] him away in another room without any assignments or teachers for three excruciating days of uncertainty in an in-school suspension." [Compl. ¶¶ 52–53.] School District Defendants move for summary judgment on Plaintiff's substantive due process claims, arguing that none of their actions "shocked the conscience." [Defs.' SJ Br. at 17–19.]

The applicable legal standard to prove a substantive due process claim is quite high. *See Vurimindi v. City of Philadelphia*, 521 F. App'x 62, 65 (3d Cir. 2013) (explaining that "[t]o state a substantive due process claim, [the plaintiff] must show

17

that the [c]ity [d]efendants deprived him of a protected property interest and that such deprivation 'shocks the conscience'") (citations omitted).  What constitutes conduct that shocks the conscience "varies depending on the factual context," *United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA,* 316 F.3d 392, 400 (3d Cir. 2003), but "only the most egregious official conduct" can be characterized as "arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (cleaned up).

Before addressing whether Plaintiff has adequately alleged that Defendants' conduct shocks the conscience, the Court must consider whether "the particular interest at issue is protected by the substantive due process clause." *Lear v. Zanic*, 524 F. App'x 797, 801 (3d Cir. 2013).  "[B]oth Supreme Court and Third Circuit precedent have held that the "right" to public education is not a fundamental right.  *Sabbah v. Springfield Sch. Dist.*, No. 19-5564, 2021 WL 2138792, at *10 (E.D. Pa. May 26, 2021) (quoting *Jarmon v. Batory*, No. 94-0284, 1994 WL 313063, at *10 (E.D. Pa. June 29, 1994; citing *Plyler v. Doe*, 457 U.S. 202, 220–21 (1982)); *Astacio v. E. Brunswick High Sch.*, No. CV16938MASLHG, 2019 WL 3843090, at *13 (D.N.J. Aug. 15, 2019)).  "Certainly then, there is no right to a discipline-free public education." *Sabbah*, 2021 WL 2138792, at *10.

Nonetheless, the Court turns to whether School District Defendants' conduct "shocks the conscience."  C.M.U. possessed a bottle of alcohol while at school.  Bennett investigated the incident, notified Plaintiff's parent, arranged for appropriate follow-up, and imposed a three-day in-school suspension pursuant to School District

18

[Docket No. 106.]

policies governing student possession of alcohol. While it is disputed what occurred during the first day of Plaintiff's suspension, he later made up the oral component of his APUSH project for full credit and graduated on time. The record bears no resemblance to the type of conduct courts have found sufficiently egregious to implicate substantive due process. *See Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F. 3d 168, 173 (3d Cir. 2001) (reserving substantive due process for "brutal and inhumane abuse of official power"); *Metzger By & Through Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988) ("A decision to discipline a student, if accomplished through excessive force and appreciable physical pain, may constitute… a violation of substantive due process[.]").

Plaintiff cannot satisfy either prerequisite of a substantive due process claim. Thus, the Court will grant School District Defendants' summary judgment motion as to Count IV of the Complaint.

### D. Count V: 42 U.S.C. Section 1981

Plaintiff's 1981 claim fails for substantively the same reasons as his Title VI claims. Section 1981 "prohibits racial discrimination in the making and enforcement of contracts[.]" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (quoting 42 U.S.C. § 1981(a)). To prevail on a § 1981 claim, Plaintiff must show: (1) that he "belongs to a racial minority; (2) an intent to discriminate on the basis of race by [Defendants]; and (3) discrimination concerning one or more of the activities enumerated in § 1981[,]" like making and enforcing contracts. *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (quoting *Pryor v. Nat'l Collegiate*

19

[Docket No. 106.]

*Athletic Ass'n.*, 288 F.3d 548, 569 (3d Cir. 2002)).  "The standard for establishing an 'intent to discriminate on the basis of race" is identical in the Title VI and § 1981 contexts."  *Pryor*, 288 F.3d at 569.

As discussed *supra*, Plaintiff has failed to produce evidence from which a reasonable jury could conclude that Defendants acted with discriminatory intent.  The Court has already determined that the alleged Nerf gun comparator does not support a reasonable inference of racial discrimination, and Plaintiff identifies no other evidence suggesting that race motivated Defendants' actions.[4]

Accordingly, the Court grants School District Defendants' summary judgment motion as to Count V of the Complaint.

### E. Counts VI, VII, X, and XI: State Created Danger

Counts VI, VII, X, and XI allege state-created danger claims.  Counts VI and X are brought against Simpson for federal and NJCRA state-created danger claims. [Compl. ¶¶ 57–61; 70–71.]  Counts VII and XI are brought against Zuckerman, Lopez, and Bennett, under federal and state law, for their participation in, and acquiescence to the state-created danger posed by Simpson, as well as their role as supervisors for Simpson.  [*Id.* ¶¶ 62–64, 72–73.]  As previously stated, the Court will interpret the NJCRA analogously to § 1983."  *Pettit,* 2011 WL 1325614, at *3 (collecting cases); *see also Borden,* 523 F.3d at 164 n. 5.

---

[4] The Court need not determine whether Plaintiff has identified a contractual relationship cognizable under § 1981 because the claim independently fails for lack of evidence of intentional racial discrimination.

[Docket No. 106.]

As a general matter, "a state-created danger claim is one exception to the general rule that "the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). To plead a state-created danger claim, a plaintiff must allege:

> 1. the harm ultimately caused was foreseeable and fairly direct;
> 2. a state actor acted with a degree of culpability that shocks the conscience;
> 3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; *and*
> 4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (emphasis added) (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281–82 (3d Cir. 2006)).

### i.        Counts VI and X: Simpson

Defendants focus on the last prong of the test. They argue that Plaintiff has failed to allege any affirmative action that Simpson used his authority in a way that made C.M.U. more vulnerable to danger than had he not acted at all. [Defs.' SJ Br. at 22.] The Court agrees. Confiscating the bottle of Fireball from C.M.U., taking him to administration, and initially giving him a bad grade do not amount to making him more vulnerable to danger; if anything Simpson's confiscation of the bottle of Fireball made C.M.U. safer. *See Morrow*, 719 F.3d at 178 (dismissing a state-created danger claim where school allegedly failed to enforce a disciplinary policy).

Alternatively, the record is also devoid of any evidence that Simpson's conduct shocked the conscience as discussed *supra*. Accordingly, the Court grants School

21

[Docket No. 106.]

District Defendants' summary judgment motion as to Count VI and X of the Complaint.

### ii.    Counts VII and XI: Zuckerman, Lopez, and Bennett

As the Court has found there is no evidence to support a state-created danger claim against Simpson, The Court similarly grants School District Defendants' summary judgment on Counts VII, and XI, and dismisses the state-created danger claims against Zuckerman, Lopez, and Bennett as administrators.

### F. Count IX: Aiding and Abetting Racial Discrimination in a Place of Public Accommodation

Plaintiff brings a New Jersey Law Against Discrimination (NJLAD) claim against School District Defendants for aiding and abetting racial discrimination in a place of public accommodation. [Compl. ¶¶ 67–69.] School District Defendants move for summary judgment on the grounds that no reasonable juror could find C.M.U. was discriminated against based on race when he was disciplined for possessing alcohol on school grounds. [Defs.' SJ Br. at 24–26.]

The NJLAD makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so." *Thange v. Oxford Glob. Res., LLC*, No. 195979, 2022 WL 2046938, at *10 (D.N.J. June 7, 2022) (citing N.J. Stat. Ann. § 10:5-12(e)). As race discrimination under NJLAD is governed by substantially the same standard as Section 1981, the Court agrees with School District Defendants, finding no sufficient evidence of racial discrimination to sustain the NJLAD claim. *Id.*

22

[Docket No. 106.]

at *10 n. 8 (citing *Deans v. Kennedy House, Inc.*, 587 F. App'x 731, 734 n.3 (3d Cir. 2014); *Murphy v. Housing Auth. and Urban Redevelopment Agency*, 32 F. Supp. 2d 753, 763 (D.N.J. 1999)).

Accordingly, the Court grants summary judgment for School District Defendants on Count IX.

### G. Counts XII, XIII, XIV, XV: 42 USC Section 1983

In Counts XII and XIV, Plaintiff brings a selective enforcement denial of equal protection claim, under both federal and New Jersey state law against Simpson for exposing C.M.U. to discipline, thereby treating him differently from other similarly situated individuals on account of his race. [Compl. ¶¶ 74–77, 83–84.] Plaintiff asserts in Counts XIII and XV class-of-one denial of equal protection claims, under federal and New Jersey state law, against Simpson on a similar basis. [*Id.* ¶¶ 78–82; 85–86.] As previously stated, the Court will interpret the NJCRA analogously to § 1983. *Pettit,* 2011 WL 1325614, at *3 (collecting cases); *see also Borden,* 523 F.3d at 164 n. 5.

Section 1983 imposes liability on individuals who deprive a person of a federal constitutional or statutory right "under color of any statute, ordinance, regulation, custom, or usage" of a state. 42 U.S.C. § 1983. Section 1983's "under color of law" requirement is the "equivalent of state action." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) ("The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the

23

[Docket No. 106.]

State?'" (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982))).

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const amend. XIV, § 1. In essence, it requires that individuals who are similarly situated be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Plaintiff pursues Equal Protection claims under two distinct theories: the selective enforcement approach and the class-of-one theory.

### i.    Counts XII and XIV: Selective Enforcement Claims Against Simpson

To prevail on a selective enforcement claim, Plaintiff must show: (1) "that [C.M.U.] was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor ... or to prevent the exercise of a fundamental right." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (omission in original) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010)). Under the Equal Protection Clause, "persons are similarly situated 'when they are alike in all relevant aspects.'" *Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025, at *6 (3d Cir. Mar. 1, 2022) (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)). Plaintiff cannot rely on "mere unequal treatment or adverse effect" to support his selective enforcement claim, but "must provide evidence of discriminatory purpose."

24

[Docket No. 106.]

*Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (quoting *Jewish Home of E. Pa. v. Ctrs. For Medicare & Medicate Servs.*, 693 F.3d 359, 363 (3d Cir. 2012)).

Here, as the Court has already found that Plaintiff's proposed comparator is not similarly situated, the selective enforcement claim can be disposed of on those grounds alone.  The record also fails to find discriminatory purpose on the part of Simpson. Accordingly, the Court grants summary judgment for School District Defendants on Counts XII and XIV.

ii.      **Counts XIII and XV: Class-Of-One Denial of Equal Protection**

Under the class-of-one theory, a plaintiff need not belong to a protected class to assert an equal protection claim.  Rather, he must establish that the defendants intentionally subjected him to differential treatment, compared with similarly situated individuals, in a manner that was irrational.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).  To succeed in a class-of-one claim, the plaintiff must show that: (1) he was treated differently from others who were similarly situated; (2) the disparate treatment was intentional; and (3) no rational basis justified the difference.  *Hill*, 455 F.3d at 239.

Here, the record does not support any of the elements to satisfy a class-of-one claim.  The white comparator who brought the Nerf gun to school was not similarly situated, there is no evidence that any "disparate treatment" on the part of Simpson was intentional, and any difference in Simpson's treatment of C.M.U. and the other student could be considered rational given the difference in bringing an open bottle of

25

[Docket No. 106.]

alcohol and a Nerf gun to school.  Accordingly, the Court grants summary judgment for School District Defendants on Counts XII and XV.

### H. Qualified Immunity

Because the Court grants summary judgment for School District Defendants on each individual claim, the Court need not determine whether the School District Defendants are qualifiedly immune from suit.

### I.  Punitive Damages

Plaintiff seeks punitive damages on all Counts.  [Compl. ¶ 87.]  Because the Court grants summary judgment on all of Plaintiff's substantive claims, this claim is dismissed.

## V.    CONCLUSION

For the above-stated reasons, School District Defendants' Motion for Summary Judgment is **GRANTED.**  An accompanying Order shall issue separately on this date. FED. R. CIV. P. 58(a).

/s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

DATED: June 26, 2026